RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0150p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TENNESSEE REPUBLICAN PARTY (16-3360); GEORGIA
REPUBLICAN PARTY and NEW YORK REPUBLICAN
STATE COMMITTEE (16-3732),

*Petitioners,*

*v.*

SECURITIES AND EXCHANGE COMMISSION; MUNICIPAL
SECURITIES RULEMAKING BOARD,

*Respondents.*

Nos. 16-3360/3732

---

On Petition for Review to the Securities and Exchange Commission;
No. MSRB-2016-06.

Argued: May 4, 2017

Decided and Filed: July 13, 2017

Before: DAUGHTREY, MOORE, and KETHLEDGE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Jason Torchinsky, HOLTZMAN VOGEL JOSEFIAK TORCHINSKY, Warrenton, Virginia, for Petitioners. Daniel Staroselsky, SECURITIES AND EXCHANGE COMMISSION, Washington, D.C., for Respondent Securities and Exchange Commission. Carter G. Phillips, SIDLEY AUSTIN LLP, Washington, D.C., for Respondent Municipal Securities Rulemaking Board. **ON BRIEF:** Jason Torchinsky, HOLTZMAN VOGEL JOSEFIAK TORCHINSKY, Warrenton, Virginia, H. Christopher Bartolomucci, Edmund G. LaCour Jr., KIRKLAND & ELLIS LLP, Washington, D.C., for Petitioners. Daniel Staroselsky, Jeffrey A. Berger, SECURITIES AND EXCHANGE COMMISSION, Washington, D.C., for Respondent Securities and Exchange Commission. Joseph R. Guerra, Eric D. McArthur, SIDLEY AUSTIN LLP, Washington, D.C., Michael L. Post, MUNICIPAL SECURITIES RULEMAKING BOARD, Washington, D.C., for Respondent Municipal Securities Rulemaking

Board.   Allen Dickerson, CENTER FOR COMPETITIVE POLITICS, Alexandria, Virginia, Tara Malloy, THE CAMPAIGN LEGAL CENTER, Washington, D.C., for Amici Curiae.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  Petitioners, the Tennessee Republican Party, the Georgia Republican Party, and the New York Republican State Committee, have challenged the legality of amendments to rules ("2016 Amendments") proposed by Respondent Municipal Securities Rulemaking Board ("MSRB") and that are "deemed to have been approved by [Respondent Securities and Exchange] Commission" ("SEC").  15 U.S.C. § 78s(b)(2)(D) (2012).  The amendments limit the campaign activities of persons who advise city and state governments on issuing municipal securities.  Ultimately, however, we do not reach the merits of this case because Petitioners have failed to establish that they have standing to challenge these amendments.  Therefore, we **DISMISS** the petitions for review of the final rule for lack of jurisdiction.  We **DENY AS MOOT** the SEC's motion to dismiss and **DENY AS MOOT** the MSRB's motion to be designated as an intervenor.

## I.  BACKGROUND

### A.  Municipal Securities Terminology

Because key terms in this case tend to be arcane, we begin with a brief primer on municipal securities markets and their participants.  Put simply, a *municipal security* is "[a] bond issued by a nonfederal government or governmental unit, such as a state bond to finance local improvements."  *Municipal Security & Municipal Bond*, Black's Law Dictionary (10th ed. 2014); *see also* 15 U.S.C. § 78c(a)(29) (similarly defining *municipal security* under the Exchange Act).  On either end of the creation of securities are *issuers* and *dealers*.  An *issuer* is "any person who issues or proposes to issue any security."[1]  15 U.S.C. § 78c(a)(8); MSRB Rule Book Rule G-37(g)(vii), at 271 (Apr. 1, 2017).  Those who are "engaged in the business of buying and selling securities" for their "own account[s] through a broker or otherwise" are called *dealers*, 15 U.S.C. § 78c(a)(5); *municipal securities dealers* are those "engaged in the business of

buying and selling municipal securities for [their] own account[s]," 15 U.S.C. § 78c(a)(30). Dealers do not always buy and sell securities on their own, however. They often operate through *brokers*, persons who "engage[] in the business of effecting transactions in securities for the account[s] of others." 15 U.S.C. § 78c(a)(4). Brokers and dealers often operate with the assistance of *municipal finance professionals*, a catchall category of persons loosely defined as being associated with brokers and dealers.[2] MSRB Rule Book Rule G-37(g)(ii), at 269–70 (Apr. 1, 2017); *see also Blount v. SEC*, 61 F.3d 938, 939–40 (D.C. Cir. 1995).

To aid municipal entities and those "committed by contract or other arrangement to support the payment of all or part of the obligations on the municipal securities," 15 U.S.C. § 78o-4(e)(10), in participating in municipal securities markets, *municipal advisors* "provide[] advice . . . with respect to municipal financial products or the issuance of municipal securities, including advice with respect to the structure, timing, terms, and other similar matters concerning such financial products or issues." 15 U.S.C. § 78o-4(e)(4)(A)(i). Municipal advisors also solicit business from municipal entities "on behalf of a broker, dealer, municipal securities dealer, municipal advisor, or investment adviser . . . that does not control, is not controlled by, or is not under common control with the person undertaking such solicitation." *Id.* § 78o-4(e)(4)(A)(ii), (9). It is possible for an entity to be registered as both a dealer and a municipal advisor; these entities are called *dealer-municipal advisors*. MSRB Rule Book Rule G-37(b)(i)(D), at 266 (Apr. 1, 2017). Certain persons associated with municipal advisors, analogous to municipal financial professionals, are called *municipal advisor professionals*.[3] *Id.* Rule G-37(g)(iii), at 270.

## B. The Original Rules

The municipal securities market is large. As of 1993, around the time when the rules that the 2016 Amendments modify first came into effect, the total value of the market was $1.2 trillion. Jon B. Jordan, *The Regulation of 'Pay-to-Play' and the Influence of Political Contributions in the Municipal Securities Industry*, 1999 Colum. Bus. L. Rev. 489, 493. Concerned "that brokers and dealers were engaging in a variety of ethically questionable practices in order to secure underwriting contracts," the MSRB drafted, and the SEC approved, several new rules that regulated pay-to-play practices in the municipal securities markets.

*Blount*, 61 F.3d at 939; Jordan, *supra*, at 496–501 (observing that "[t]he initial movement against pay-to-play came from the private sector, which was incurring its own expenses, in the form of political contributions, to play under the system"). Chief among these regulations was Rule G-37.

Just before the 2016 Amendments came into effect, Rule G-37 was "composed of several separate and mutually reinforcing requirements for *dealers*" and *brokers*. *See* Notice of Filing of a Proposed Rule Change Consisting of Proposed Amendments to Rule G-37, on Political Contributions and Prohibitions on Municipal Securities Business, Rule G-8, on Books and Records, Rule G-9, on Preservation of Records, and Forms G-37 and G-37x ("2015 SEC Notice"), 80 Fed. Reg. 81710, 81711 (Dec. 23, 2015) (Pet'rs' App'x at 54) (emphasis added). The rule imposed "[l]imitations on business activities that are triggered by the making of certain political contributions; limitations on solicitation and coordination of political contributions; and disclosure and recordkeeping regarding political contributions and municipal securities business." *Id.*

Specifically, Rule G-37 prohibited brokers, dealers, and municipal securities dealers from "engag[ing] in municipal securities business with an issuer within two years after any contribution to an official of such issuer made by . . . the broker, dealer or municipal securities dealer; . . . any municipal finance professional associated with such broker, dealer or municipal securities dealer; or . . . any political action committee controlled by the broker, dealer or municipal securities dealer or by any municipal finance professional." MSRB Rule Book Rule G-37(b)(i), at 269 (July 1, 2016). There was one exception to this prohibition: municipal finance professionals could contribute up to $250 per election to an official of an issuer for whom they were entitled to vote without triggering the above prohibition. *Id.* For instance, a municipal finance professional associated with a dealer could contribute a maximum of $250 to a gubernatorial candidate in their state without affecting the dealer's ability to engage in municipal securities business with that state.

In addition to prohibiting contributions, Rule G-37 also prohibited the solicitation of other persons for contributions and payments.[4] Brokers, dealers, municipal securities dealers, and their municipal finance professionals were prohibited from "solicit[ing] any person . . . to

make any *contribution*, or [to] coordinate any contributions, to an *official* of an issuer with which the broker, dealer or municipal securities dealer is engaging or is seeking to engage in municipal securities business." *Id.* Rule G-37(c)(i), at 269 (emphasis added). They were also prohibited from "solicit[ing] any person . . . to make any *payment*, or . . . coordinate any payments, to a *political party* of a state or locality where the broker, dealer or municipal securities dealer is engaging or is seeking to engage in municipal securities business." *Id.* Rule G-37(c)(ii), at 269 (emphasis added).

Finally, Rule G-37 imposed disclosure requirements for brokers, dealers, and municipal securities dealers. *Id.* Rule G-37(e), at 269–71. Rules G-8 and G-9 and Forms G-37 and G-37x complemented these disclosure requirements: Rules G-8 and G-9 "specify the books and records that must be made and kept current by dealers," MSRB Reg. Notice 2016-06, at 24 (Feb. 17, 2016) (Pet'rs' App'x at 24), and regulated entities submit Forms G-37 and G-37x to comply with disclosure requirements, *id.* at 25 (Pet'rs' App'x at 25).

**C.  The 2016 Amendments**

Although Rule G-37 had historically been limited to dealers and brokers, the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 expanded the MSRB's regulatory authority to include municipal advisors in addition to brokers and dealers. 2015 SEC Notice, 80 Fed. Reg. at 81710 (Pet'rs' App'x at 53); *see also* 15 U.S.C. §§ 78o-4(a)(5), (b)(2). Granted this new authority, the MSRB proposed amendments to Rules G-8, G-9, and G-37 and Forms G-37 and G-37x (the 2016 Amendments), which were "deemed to have been approved by the [Securities and Exchange] Commission." *See* MSRB Reg. Notice 2016-06, at 1 n.1 (Feb. 17, 2016) (quoting 15 U.S.C. § 78s(b)(2)(D)) (Pet'rs' App'x at 1). The 2016 amendments became effective on August 17, 2016.[5] *Id.*

The terms of Rule G-37 have essentially remained unchanged following the 2016 Amendments. The central difference is that Rule G-37 now applies to municipal advisors and municipal advisor third-party solicitors in addition to brokers, dealers, and municipal securities dealers. Brokers, dealers, and municipal securities dealers are still prohibited from "engag[ing] in *municipal securities business* with a municipal entity within two years after a contribution to

an official of such municipal entity with *dealer* selection influence . . . made by the dealer; a municipal finance professional of the dealer; or a political action committee controlled by either the dealer or a municipal finance professional of the dealer." MSRB Rule Book Rule G-37(b)(i)(A), at 266 (Apr. 1, 2017) (emphasis added). In addition, now, "[n]o municipal advisor (excluding a municipal advisor third-party solicitor) shall engage in *municipal advisory business* with a municipal entity within two years after a contribution to an official of such municipal entity with *municipal advisor* selection influence . . . made by the municipal advisor; a municipal advisor professional of the municipal advisor; or a political action committee controlled by either the municipal advisor or a municipal advisor professional of the municipal advisor." *Id.* Rule G-37(b)(i)(B), at 266 (emphasis added). A similar rule also applies to municipal advisor third-party solicitors. *See id.* Rule G-37(b)(i)(C), at 266.

Consistent with the old rule, *municipal finance professionals* may contribute up to $250 to an official of a municipal entity for whom they are entitled to vote without triggering the two-year ban on municipal securities business for any associated brokers, dealers, and municipal securities dealers. *Id.* Rule G-37(b)(ii)(A), at 267. And now, *municipal advisor professionals* may contribute up to $250 per election to an official of a municipal entity for whom they are entitled to vote without triggering the two-year ban on municipal advisory business for any associated municipal advisors. *Id.*

Following the 2016 Amendments, Rule G-37 also contains the same prohibitions on solicitation for contributions and payments: "No dealer or municipal finance professional of the dealer shall solicit any person . . . or political action committee to make any *contribution*, or coordinate any contributions, to an *official* of a municipal entity with dealer selection influence with which municipal entity the dealer is engaging, or is seeking to engage in municipal securities business" and "[n]o dealer, . . . municipal finance representative, . . . dealer solicitor, [or] . . . municipal finance principal . . . shall solicit any person . . . or political action committee to make any *payment*, or coordinate any payments, to a *political party* of a state or locality where the dealer . . . is engaging, or is seeking to engage in municipal securities business."[6] *Id.* Rule G-37(c), at 267. Now, however, these prohibitions extend to municipal advisors, municipal advisor professionals, municipal advisor third-party solicitors, and dealer-municipal advisors. *See id.*

Finally, the post-amendment versions of Rules G-8, G-9 and G-37 and Forms G-37 and G-37x impose nearly identical disclosure requirements as the pre-amendment versions.  *See id.* Rule G-37(e), at 267–68; 2015 SEC Notice, 80 Fed. Reg. at 81724–25 (Pet'rs' App'x at 67–68) (describing the amendments to Rules G-8 and G-9 and Forms G-37 and G-37x).  Like other sections of Rule G-37, these rules and forms extend disclosure requirements to "municipal advisors and their associated persons."  2015 SEC Notice, 80 Fed. Reg. at 81724 (Pet'rs' App'x at 67).

## D.  The Petitions & Procedural History

Concerned that the 2016 Amendments were unlawful, the Tennessee Republican Party filed a petition for review of the final rule in this court on April 12, 2016.  Tenn. Republican Party's Pet. (Pet'rs' App'x at 80–86).  The Georgia Republican Party and the New York Republican State Committee filed a nearly identical petition in the Eleventh Circuit on April 13, 2016.  Ga. Republican Party & N.Y. Republican State Comm.'s Pet. (Pet'rs' App'x at 87–92). The Eleventh Circuit transferred the Georgia Republican Party and New York Republican State Committee's petition to this Court, *see* June 24, 2016 Order, and we subsequently consolidated the cases, *see* July 18, 2016 Order.

Petitioners attached affidavits of three individuals in support of their petitions:  Frederick Brent Leatherwood, the executive director of the Tennessee Republican Party, J. Adam Pipkin, the executive director of the Georgia Republican Party, and Jason Weingartner, the executive director of the New York Republican State Committee.  *See* Leatherwood Aff. (Pet'rs' App'x at 304–10); Pipkin Aff. (Pet'rs' App'x at 311–14); Weingartner Aff. (Pet'rs' App'x at 315–20). Leatherwood and Weingartner claimed that "the Municipal Securities Rulemaking Board's Political Contribution Rule, codified in Rule G-37, . . . limits the ability of municipal securities dealers, financial professionals, and now municipal advisors and municipal advisor professionals to make political contributions."  Leatherwood Aff. ¶ 6 (Pet'rs' App'x at 305); Weingartner Aff. ¶ 5 (Pet'rs' App'x at 316).  Pipkin also claimed that "the MSRB's Political Contribution Rule" harmed his party.  *See, e.g.,* Pipkin Aff. ¶ 6 (Pet'rs' App'x at 312).

Although the executive directors did not identify persons affected by the 2016 Amendments in particular, they did identify individuals who were generally affected by "the MSRB's Political Contribution Rule." Specifically, Leatherwood identified an individual named Steve McManus, "a covered associate of a registered investment advisor" who "works for FTB Advisors which is a registered broker-dealer with the MSRB." Leatherwood Aff. ¶ 16 (Pet'rs' App'x at 307–08). Leatherwood claims that "[t]he MSRB's Political Contribution Rule's two-year ban applies to Mr. McManus's political contributions to officials who have broker dealer and/or advisor selection influence," but that McManus "would contribute more than $250 to a covered official in a future election if the MSRB's Political Contribution Rule no longer applied to limit such contributions." *Id.* ¶¶ 16–17 (Pet'rs' App'x at 308). In addition, although "McManus has declined to solicit contributions to the Tennessee Republican Party," he has "informed party officials that he would be willing to solicit contributions for the Tennessee Republican Party in the future if the MSRB's Political Contribution Rule no longer applied to limit such activities." *Id.* ¶¶ 18–19 (Pet'rs' App'x at 308). The only other individuals identified in the record were "three [New York] Republican officeholders who ran for U.S. Congress that were hindered by the MSRB's Political Contribution Rule": State Senator Jack Martins, Town of Gates Supervisor Mark Assini, and State Assemblywoman Claudia Tenney. Weingartner Aff. ¶ 10 (Pet'rs' App'x at 317–18).

## II. DISCUSSION

A threshold issue in this case is whether Petitioners have standing to challenge the 2016 Amendments, either in their individual capacity or in their capacity as representatives of their members. We hold that Petitioners lack standing under either theory.

## A. Legal Standard

There are three elements of Article III standing that those invoking federal jurisdiction must establish. Our focus today is whether each petitioner has established the first element, injury in fact, which requires a petitioner to "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. ——, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The burden of proof for each element operates "in the same way as any other matter on which [a] plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. So, on review of a final agency action, "the petitioner [must] present specific facts supporting standing through citations to the administrative record or 'affidavits or other evidence' attached to its opening brief, unless standing is self-evident." *Sierra Club v. EPA* ("*Sierra Club 2015*"), 793 F.3d 656, 662 (6th Cir. 2015) (quoting *Sierra Club v. EPA* ("*Sierra Club 2002*"), 292 F.3d 895, 900 (D.C. Cir. 2002)).

### 1. Self-Evident Injury

We decline to hold that Petitioners' injury is self-evident. On occasion, we have found it "reasonable to infer actual and imminent . . . injuries" despite the lack of definitive proof. *Id.* at 664–65. For instance, we have excused definitive proof where the injury was impossible to prove with absolute certainty, *id.* at 664, or where the injury could not be "specifically identified in advance," *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004). Neither of these circumstances exists here; there is no reason why Petitioners could not have put forth an affidavit from a particular municipal advisor professional who would have contributed more than $250 were it not for the 2016 Amendments.

Moreover, the record is devoid of information that would permit us "reasonabl[y] to infer" that the 2016 Amendments would injure Petitioners. *See Sierra Club 2015*, 793 F.3d at 664. Crucially, we have only limited information on the number of persons possibly affected by the amendments. At most, we are told that as of August 18, 2014, there were approximately 713 registered non-dealer municipal advisory firms in the United States that would be affected by the 2016 Amendments.[7] *See* Request for Comment on Draft Amendments to MSRB Rule G-37 to Extend its Provisions to Municipal Advisors at 29 (Pet'rs' App'x at 121). However, we do not know how many municipal advisor professionals are associated with these firms, let alone the

likelihood that they or their firms would donate to Petitioners were it not for the 2016 Amendments.

Petitioners do identify one participant in the municipal securities market who, at first blush, appears to be affected by the 2016 Amendments. The Leatherwood affidavit identifies an individual named Steve McManus, "a covered associate of a registered investment advis[e]r" and employee of a broker-dealer, who "has stated that he would contribute more than $250 to a covered official in a future election if the MSRB's Political Contribution Rule no longer applied to limit such contributions." Leatherwood Aff. ¶¶ 16–17 (Pet'rs' App'x at 307–08). "Additionally, Mr. McManus has declined to solicit contributions to the Tennessee Republican Party because of the MSRB's Political Contribution Rule," but has stated "that he would be willing to solicit contributions for the Tennessee Republican Party in the future if the MSRB's Political Contribution Rule no longer applied to limit such activities." *Id.* ¶¶ 18–19 (Pet'rs' App'x at 308).

The issue regarding McManus is that we do not know whether he was constrained from contributing to candidates or soliciting contributions for the Tennessee Republican Party before the 2016 Amendments became effective. This detail matters. Petitioners challenge only the 2016 Amendments; they do not challenge Rule G-37 as a whole. *See* Tenn. Republican Party's Pet. at 2 (Pet'rs' App'x at 81); Ga. Republican Party & N.Y. Republican State Comm.'s Pet. at 1–2 (Pet'rs' App'x at 87–88). Therefore, if Rule G-37 already prohibited McManus from contributing more than $250 to an official of an issuer or soliciting contributions for the Tennessee Republican Party without triggering the two-year ban, the same limits in the 2016 Amendments do not injure him. And because McManus is the only participant in the municipal securities market identified in the record, Petitioners must show that he was affected by the 2016 Amendments in particular if they want to show that even one person limited their contributions or solicitation. They have not made such a showing.

Leatherwood's affidavit states that "[t]he MSRB's Political Contribution Rule's two-year ban applies to Mr. McManus's political contributions to officials who have broker dealer and/or advisor selection influence." Leatherwood Aff. ¶ 16 (Pet'rs' App'x at 308). However, both before and after the 2016 Amendments, Rule G-37 prohibited brokers, dealers, and municipal

securities dealers from contributing to "any person . . . who was, at the time of the contribution, an incumbent, candidate or successful candidate . . . for elective office of the issuer which office is directly or indirectly responsible for, *or can influence the outcome of*, the hiring of a broker, dealer or municipal securities dealer for municipal securities business by the issuer," MSRB Rule Book Rule G-37(g)(vi), at 272 (July 1, 2016) (emphasis added); *see also* MSRB Rule Book Rule G-37(g)(xvi), at 271–72 (Apr. 1, 2017). *Compare* MSRB Rule Book Rule G-37(b)(i), at 269 (July 1, 2016), *with* MSRB Rule G-37(b)(i)(A), at 266 (Apr. 1, 2017). Therefore, Leatherwood's affidavit sheds no light upon whether the 2016 Amendments in particular affect McManus. We are thus left with a record that does not identify a single individual whom the 2016 Amendments have prevented from donating to Petitioners or contributing to the Petitioners' candidates. Without any further basis upon which we could assume that such an individual exists, we decline to hold that Petitioners' injuries are self-evident.

## 2. Injury Based on the Administrative Record, Affidavits, or Other Evidence

Because their injuries are not self-evident, Petitioners bear the burden to "present specific facts supporting standing through citations to the administrative record or 'affidavits or other evidence' attached to [their] opening brief." *Sierra Club 2015*, 793 F.3d at 662 (quoting *Sierra Club 2002*, 292 F.3d at 900). As a general matter, an injury in fact is not difficult to prove in the fundraising context. "If . . . a political party can marshal its forces more effectively by winning its lawsuit, that ought to be enough for Article III." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 460 (6th Cir. 2014); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (recognizing a "drain on the organization's resources" as a "concrete and demonstrable injury"); *Taxation with Representation of Washington v. Regan*, 676 F.2d 715, 723 (D.C. Cir. 1982) (en banc) (recognizing the standing of an organization whose fundraising efforts would be impaired by an IRS tax-deductible-contribution rule because the organization would "be harmed if its contributors cease[d] giving it money"), *rev'd on other grounds*, 461 U.S. 540 (1983).

As referenced above, a key feature of this case is that Petitioners challenge the 2016 Amendments, rather than the original rules. *See* Tenn. Republican Party's Pet. at 2 (Pet'rs' App'x at 81); Ga. Republican Party & N.Y. Republican State Comm.'s Pet. at 1–2 (Pet'rs' App'x at 87–88). Therefore, a showing that the *original* rules diminish Petitioners' ability to "marshal

[their] forces more effectively," *Fair Elections Ohio*, 770 F.3d at 460, is insufficient to establish standing; Petitioners must show that the *2016 Amendments* diminish this ability.

### a. Standing in Petitioners' Individual Capacity

The sole pieces of evidence that Petitioners have introduced in support of standing are the three affidavits of their executive directors. None of these affidavits provide any such support. First, and centrally, each executive director conflates the original rules with the 2016 Amendments. Leatherwood and Weingartner claim that "the Municipal Securities Rulemaking Board's Political Contribution Rule, codified in Rule G-37, . . . limits the ability of municipal securities dealers, financial professionals, and now municipal advisors and municipal advisor professionals to make political contributions." Leatherwood Aff. ¶ 6 (Pet'rs' App'x at 305); Weingartner Aff. ¶ 5 (Pet'rs' App'x at 316). Pipkin never even defines "the MSRB's Political Contribution Rule." *See* Pipkin Aff. ¶ 6 (Pet'rs' App'x at 312).

The pre-amendment version of Rule G-37, which Petitioners do not challenge, regulated brokers, dealers, and municipal securities dealers no differently than the post-amendment version. Therefore, to show injury-in-fact, the affidavits would have had to show that the 2016 Amendments alone, which newly regulate municipal advisors and municipal advisor professionals, diminish Petitioners' ability to marshal their forces. By conflating the original rule, which covers brokers, dealers, and municipal securities dealers, with the 2016 Amendments, which additionally cover municipal advisors and municipal advisor professionals, the affidavits do not support such a showing. Instead, they leave ambiguity whether the rules harm the political parties because brokers, dealers, and municipal securities dealers are not contributing and soliciting or whether the rules harm the parties because municipal advisors and municipal advisor professionals are not contributing and soliciting.

Although Leatherwood and Weingartner never clearly refer to the 2016 Amendments, there is one occasion in which Pipkin appears to refer to the 2016 Amendments. However, this reference fails to establish standing for different reasons. Pipkin states that he "expect[s] that the expanded coverage of the MSRB's Political Contribution Rule will now cause more individuals to . . . refrain from contributing." *Id.* ¶ 10 (Pet'rs' App'x at 313). Even assuming that "the

expanded coverage of the MSRB's Political Contribution Rule" refers to the 2016 Amendments, "[s]uch 'some day' intentions" are precisely the sort of speculation that does not establish standing. *See Lujan*, 504 U.S. at 564 (holding that "the affiants' profession of an 'inten[t]' to return to the places they had visited before—where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species—is simply not enough" to establish standing). Rather, Pipkin must attest that the amendments have caused or will imminently cause injury to his party. Because he does not do so, his affidavit does not support standing for his party.

### b. Organizational Standing

Petitioners argue in the alternative that they have organizational standing because their members have been injured. In addition to establishing standing because of a direct injury to the association, "[a]n association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Sierra Club 2015*, 793 F.3d at 661 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). To establish organizational standing, "plaintiff-organizations [must] make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). Such specificity requires that the plaintiff-organization "name the individuals who were harmed" unless "*all* the members of the organization are affected by the challenged activity." *Id.* at 498–99.

Pipkin fails to identify any members of the Georgia Republican Party who are affected by the amendments, so the Georgia Republican Party does not have standing on behalf of its members. Leatherwood identifies McManus, Leatherwood Aff. ¶¶ 17–19 (Pet'rs' App'x at 308), but as explained above, Leatherwood's conflation of the 2016 Amendments and Rule G-37 as a whole fails to show that the 2016 Amendments in particular injured McManus.

Weingartner's affidavit fares no better. Weingartner identifies three Republican candidates who claim to be "hindered by the MSRB's Political Contribution Rule." Weingartner

Aff. ¶ 10 (Pet'rs' App'x at 317–18). The "Political Contribution Rule" that allegedly hinders the three New York officeholders, by Weingartner's account, "limits the ability of municipal securities dealers, financial professionals, and now municipal advisors and municipal advisor professionals to make political contributions." *Id.* ¶ 5 (Pet'rs' App'x at 316). Weingartner's description of the "Political Contribution Rule" thus encompasses the entirety of Rule G-37: the 2016 Amendments, which "now" regulate municipal advisors and municipal advisor professionals, and the regulations that preexisted those amendments, which regulated municipal securities dealers and municipal finance professionals. We do not know whether the 2016 Amendments in particular have hindered these three candidates, which is what the New York Republican State Committee needed to prove. *See Sierra Club 2015*, 793 F.3d at 662. Therefore, and because the Tennessee Republican Party and Georgia Republican Party have likewise failed to meet this burden, we hold that Petitioners have not established standing on behalf of their members.

### III.  CONCLUSION

Because Petitioners' injuries are not self-evident and because Petitioners have failed to put forth evidence that supports the alleged injury in fact, we hold that Petitioners lack standing. Therefore, we **DENY** the petitions for review of the final rule for lack of jurisdiction. We **DENY AS MOOT** the SEC's motion to dismiss and **DENY AS MOOT** the MSRB's motion to be designated as an intervenor.

---

1.     The Exchange Act defines *person* as "a natural person, company, government, or political subdivision, agency, or instrumentality of a government." 15 U.S.C. § 78c(a)(9).

2.     Specifically, a *municipal finance professional* is any municipal finance representative, dealer solicitor, municipal finance principal, dealer supervisory chain person, or dealer executive officer. MSRB Rule Book Rule G-37(g)(ii), at 269–70 (Apr. 1, 2017).

   A) A *municipal finance representative* is "any associated person primarily engaged in municipal securities representative activities . . . other than sales activities with natural persons." *Id.* Rule G-37(g)(ii)(A), at 269. *Municipal securities representative activities* include "underwriting, trading or sales of municipal securities," "financial advisory or consultant services for issuers in connection with the issuance of municipal securities," "research or investment advice with respect to municipal securities," or "any other

activities which involve communication, directly or indirectly, with public investors in municipal securities." *Id.* Rule G-3(a)(i)(A), at 5.

B) A *dealer solicitor* is "any associated person who is a municipal solicitor." *Id.* Rule G-37(g)(ii)(B), at 269. A *municipal solicitor* is "an associated person of a dealer who solicits a municipal entity for municipal securities business on behalf of the dealer," "an associated person of a municipal advisor who solicits a municipal entity for municipal advisory business on behalf of the municipal advisor," or "an associated person of a municipal advisor third-party solicitor who solicits a municipal entity on behalf of a dealer, municipal advisor or investment adviser . . . that does not control, is not controlled by, or is not under common control with such municipal advisor third-party solicitor." *Id.* Rule G-37(g)(xiii), at 271–72. An *investment adviser* is "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities," subject to some exceptions. *See* 15 U.S.C. § 80b-2(a)(11), *cited in* 15 U.S.C. § 78c(a)(20). Rule G-37 defines *solicit* as "making . . . a direct or indirect communication with a municipal entity for the purposes of obtaining or retaining an engagement by the municipal entity of a dealer, municipal advisor or investment adviser . . . for municipal securities business, municipal advisory business or investment advisory services; provided, however, that it does not include advertising by a dealer, municipal advisor or investment adviser." *Id.* G-37(g)(xix), at 272. A *municipal advisor third-party solicitor* is "a municipal advisor that is currently soliciting a municipal entity, is engaged to solicit a municipal entity, or is seeking to be engaged to solicit a municipal entity for direct or indirect compensation, on behalf of a dealer, municipal advisor or investment adviser . . . that does not control, is not controlled by, or is not under common control with the municipal advisor undertaking such solicitation." *Id.* Rule G-37(g)(x), at 271. "[A] municipal advisor[, defined *infra*,] may at one point in time also be a municipal advisor third-party solicitor and at another point in time may no longer fall within the proposed definition. For example, in one engagement, a municipal advisor's role may be limited to that of a municipal advisor third-party solicitor and the municipal advisor would solicit a municipal entity on behalf of a third-party dealer, municipal advisor, or investment adviser." Notice of Filing of a Proposed Rule Change Consisting of Proposed Amendments to Rule G-37, on Political Contributions and Prohibitions on Municipal Securities Business, Rule G-8, on Books and Records, Rule G-9, on Preservation of Records, and Forms G-37 and G-37x, 80 Fed. Reg. 81710, 81714 (Dec. 23, 2015) (Pet'rs' App'x at 57). *Municipal securities business* "encompass[es] certain activities of dealers, such as acting as negotiated underwriters (as managing underwriter or as syndicate member), financial advisors and consultants, placement agents, and negotiated remarketing agents." *Id.* Rule G-37 Interpretations II.3, at 273. *Municipal advisory business* consists of "those activities that would cause a person to be a municipal advisor." *Id.* Rule G-37(g)(ix), at 271. This includes "(A) the provision of advice to or on behalf of a municipal entity or an obligated person with respect to municipal financial products or the issuance of municipal securities, including

advice with respect to the structure, timing, terms, and other similar matters concerning such financial products or issues and (B) the solicitation of a municipal entity or obligated person." *Id.*

C) A *municipal finance principal* is "any associated person who is both (1) a municipal securities principal or a municipal securities sales principal; and (2) a supervisor of any municipal finance representative . . . or dealer solicitor." *Id.* Rule G-37(g)(ii)(C), at 270. A *municipal securities principal* is "a natural person (other than a municipal securities sales principal), associated with a broker, dealer or municipal securities dealer who is directly engaged in the management, direction or supervision of . . . underwriting, trading or sales of municipal securities; . . . financial advisory or consultant services for issuers in connection with the issuance of municipal securities; . . . processing, clearance, and, in the case of brokers, dealers and municipal securities dealers other than bank dealers, safekeeping of municipal securities; . . . research or investment advice with respect to municipal securities; . . . any other activities which involve communication, directly or indirectly, with public investors in municipal securities; . . . maintenance of records with respect to [these] activities[; or] . . . training of municipal securities principals or municipal securities representatives." *Id.* Rule G-3(b)(i), at 5–6. A *municipal securities sales principal* is "a natural person (other than a municipal securities principal) associated with a broker, dealer or municipal securities dealer (other than a bank dealer) whose supervisory activities with respect to municipal securities are limited exclusively to supervising sales to and purchases from customers of municipal securities." *Id.* Rule G-3(c)(i), at 7.

D) A *dealer supervisory chain person* is "any associated person who is a supervisor of any municipal finance principal up through and including, in the case of a dealer other than a bank dealer, the Chief Executive Officer or similarly situated official and in the case of a bank dealer, the officer or officers designated by the board of directors of the bank as responsible for the day-to-day conduct of the bank's municipal securities dealer activities." *Id.* Rule G-37(g)(ii)(D), at 270.

E) A *dealer executive officer* is "any associated person who is a member of an executive or management committee (or similarly situated official) of a dealer." *Id.* Rule G-37(g)(ii)(E), at 270.

3.       Specifically, a *municipal advisor professional* is any municipal advisor representative, municipal advisor solicitor, municipal advisor principal, municipal advisor supervisory chain person, and municipal advisor executive officer. MSRB Rule Book Rule G-37(g)(iii), at 270 (Apr. 1, 2017).

A) A *municipal advisor representative* is "a natural person associated with a municipal advisor who engages in municipal advisory activities on the municipal advisor's behalf, other than a person performing only clerical, administrative, support or similar functions." *Id.* Rule G-3(d)(i)(A), at 7; *id.* Rule G-37(g)(iii)(A), at 270.

B) A *municipal advisor solicitor* is "any associated person who is a municipal solicitor." *Id.* Rule G-37(d)(iii)(B), at 270.

C) A *municipal advisor principal* is "any associated person who is both," *id.* Rule G-37(g)(iii)(C), at 270, (1) "a natural person associated with a municipal advisor who is qualified as a municipal advisor representative and is directly engaged in the management, direction or supervision of the municipal advisory activities of the municipal advisor and its associated persons," *id.* Rule G-3(e)(i), at 7, and (2) "a supervisor of any municipal advisor representative . . . or municipal advisor solicitor." *Id.* Rule G-37(g)(iii)(C), at 270.

D) A *municipal advisor supervisory chain person* is "any associated person who is a supervisor of any municipal advisor principal up through and including, in the case of a municipal advisor other than a bank municipal advisor, the Chief Executive Officer or similarly situated official, and, in the case of a bank municipal advisor, the officer or officers designated by the board of directors of the bank as responsible for the day-to-day conduct of the bank's municipal advisory activities." *Id.* Rule G-37(g)(iii)(D), at 270.

E) A *municipal advisor executive officer* is "any associated person who is a member of the executive or management committee (or similarly situated official) of a municipal advisor (or, in the case of a bank municipal advisor, the separately identifiable department or division of the bank." *Id.* Rule G-37(g)(iii)(E), at 270.

4.     Rule G-37 defines *contribution* as follows:

(vi) "Contribution" means any gift, subscription, loan, advance, or deposit of money or anything of value made:

    (A) to an official of a municipal entity:
        (1) for the purpose of influencing any election for federal, state or local office;
        (2) for payment of debt incurred in connection with any such election; or
        (3) for transition or inaugural expenses incurred by the successful candidate for state or local office; or

    (B) to a bond ballot campaign:
        (1) for the purpose of influencing (whether in support of or opposition to) any ballot initiative seeking authorization for the issuance of municipal securities through public approval obtained by popular vote;
        (2) for payment of debt incurred in connection with any such ballot initiative; or
        (3) for payment of the costs of conducting any such ballot initiative.

MSRB Rule Book Rule G-37(g)(vi), at 270 (Apr. 1, 2017). The rule defines *payment* as "any gift, subscription, loan, advance, or deposit of money or anything of value." *Id.* Rule G-37(g)(xvii), at 272. These definitions are identical to the pre-amendment definitions. *See* MSRB Rule Book Rule G-37(g)(i), (viii), at 271–72 (July 1, 2016).

5.     We reference the July 1, 2016 version of the MSRB Rule Book to refer to the rules before the 2016 Amendments became effective because this was the last published rulebook before

August 17, 2016. We reference the April 1, 2017 version of the MSRB Rule Book to refer to the rules after the 2016 Amendments became effective because that is the version of the rulebook as of the date of oral argument.

6.        An *official of a municipal entity with dealer selection influence* is "any person (including any election committee for such person) who was, at the time of the contribution, an incumbent, candidate or successful candidate:  (1) for elective office of the municipal entity which office is directly or indirectly responsible for, or can influence the outcome of, the hiring by the municipal entity of a dealer for municipal securities business; or (2) for any elective office of a state or of any political subdivision, which office has authority to appoint any person who is directly or indirectly responsible for, or can influence the outcome of, the hiring by a municipal entity of a dealer for municipal securities business."  MSRB Rule Book Rule G-37 (g)(xvi)(A), at 271–72 (Apr. 1, 2017).

7.        Counsel for the MSRB also indicated at oral argument that there are four-thousand registered municipal advisors.        Oral        Argument        at        23:22,        http://www.opn.ca6.uscourts.gov/internet/court_audio/audSearch.html (last visited May 16, 2017).  In addition, one comment on the amendments indicates that "[a]s of 2013, . . . there were 1,130 registered municipal advisors."  Public Citizen et al., Comment on Draft Amendments to MSRB Rule G-37 to Extend its Provisions to Municipal Advisors (MSRB Regulatory Notice 2014-15), at 4 (Oct. 1, 2014) (MSRB's App'x at 324).  Although these figures are helpful, "[w]e do not rely on [counsel's] representations at argument as 'the necessary factual predicate may not be gleaned from the briefs and arguments themselves.'"  *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 235 (1990).