NOT RECOMMENDED FOR PUBLICATION

File Name: 20a0193n.06

No. 18-4137

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

)
)
)
)
BLOCK COMMUNICATIONS, INC., LIMA )
COMMUNICATIONS CORPORATION, and )
WEST CENTRAL OHIO BROADCASTING )
CORPORATION, )

      Petitioners, )

v. )

)
FEDERAL COMMUNICATIONS COMMISSION )
and THE UNITED STATES OF AMERICA, )

      Respondents. )

FILED
Apr 03, 2020
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
OF AN ORDER OF THE
FEDERAL
COMMUNICATIONS
COMMISSION

---

**BEFORE:  SUHRHEINRICH, CLAY, and DONALD, Circuit Judges.**

    **BERNICE DONALD, Circuit Judge.**  Petitioners Block Communications, Inc., Lima Communications Corporation, and West Central Ohio Broadcasting Corporation ("Block Communications"), seek review of a Federal Communications Commission ("FCC") order, which found that the FCC's Media Bureau had properly expanded television station WHIO's local market to include Auglaize County, Ohio, such that WHIO would be entitled to "must-carry" rights within that county.  Petitioners seek a determination that the FCC's order is "arbitrary, capricious, and an abuse of discretion; violates federal law, including, but not limited to, the Communications Act of 1934, as amended, and FCC regulations, policies and/or procedures promulgated thereunder; is unsupported by the facts or substantial evidence; and is otherwise contrary to law."  CA6 R. 1-1,

No. 18-4137, *Block Communications, Inc., et al. v. FCC, et al.*

Pet., at 2. Because Block Communications has failed to demonstrate an injury attributable to the FCC order including the Auglaize County communities in WHIO's television market, we dismiss the case for lack of standing.

I.

Every year, the Nielsen Company assigns communities to television markets, called "designated market areas" ("DMAs"), which function like television districts based on viewing patterns. Auglaize County, Ohio sits between Dayton, in Montgomery County, and Lima, in Allen County; those cities are the hubs of the Dayton DMA and the Lima DMA, respectively. In the years leading up to this case, twenty-three communities within Auglaize County, Ohio, were assigned to the Dayton DMA. In 2013, the Nielsen Company reassigned the Auglaize County communities from the Dayton DMA to the Lima DMA.

This designation affected the rights of certain television broadcast stations. Under the Cable Television Consumer Protection and Competition Act of 1992, some commercial television broadcast stations are afforded "must-carry" rights with respect to the cable systems located within their local market, which under FCC regulations is generally coextensive with the station's DMA as designated by Nielsen. 47 U.S.C. § 534(a), *Turner Broadcast System, Inc. v. FCC*, 512 U.S. 622 (1994) (upholding these must-carry requirements), *In the Matter of Definition of Markets for Purposes of the Cable Television Mandatory Television Broadcast Signal Carriage Rules*, 11 FCC Rcd 6201, 6206-07 (1996). These rights provide mandatory carriage on those cable systems. Before 2013, WHIO-TV, a CBS-affiliate of Cox Media Group ("Cox"), had must-carry rights in

Auglaize County. After the Nielsen Company changed the DMAs, however, WHIO lost those rights.

Under Section 614(h)(1)(C)(i) of the Communications Act of 1934, the FCC has the authority to modify a television broadcast station's local market so that it is no longer coextensive with Nielsen's DMA designation, and thereby change the station's must-carry rights.[1] The FCC may "with respect to a particular television broadcast station, include additional communities within its television market or exclude communities from such station's television market[.]" 47 U.S.C. § 534(h)(1)(C)(i). Not wishing to lose its must-carry rights, Cox petitioned the FCC to exercise this authority and keep Auglaize County within Cox's local market, rather than following Nielsen's DMA designations, which would remove those communities from Cox's market.[2]

The Bureau determined that WHIO had been carried in some Auglaize County communities as early as 1972. *In the Matter of Petition for Modification of Dayton, OH Designated Market Area with Regard to Television Station WHIO-TV, Dayton, OH*, 28 FCC Rcd 16011, 16017-18 (2013) (*Bureau Order*). Still others began carrying the station in 1992. *Id.* The most recent period of coverage began in 2009. *Id.* At the time of the petition, WHIO was the highest rated television station in Auglaize County. *Id.* at 16019. WHIO was an average of roughly fifty miles away from all Auglaize County communities. *Id.* at 16018. Cox also demonstrated that more Auglaize County residents commuted to the Dayton DMA for work than the Lima DMA. *Id.* Finally, WHIO had an established Northern Bureau, which was dedicated to covering the news from northern portions of the station's market, including Auglaize County, and

---

[1] *See also* 47 U.S.C. § 338(l)(1) (providing the same process for satellite carriers).

[2] WHIO also petitioned that Wayne County, Indiana, which neighbors the Dayton, Ohio, DMA, be included in its local market. However, Petitioners only challenge the Order insofar as it relates to Auglaize County.

had aired sixty-five news segments and 210 weather segments that concerned Auglaize County in the two years prior to the petition. *Id.*

"Given the station's history of carriage, its provision of local programming, and the meaningful viewership shares garnered by WHIO in these communities," the Bureau granted Cox's petition to modify its local market, thereby giving WHIO must-carry rights with cable systems in Auglaize County. *Bureau Order*, at 16021.

On December 23, 2013, Block Communications and its subsidiaries—Lima Communications Corporation, which broadcasts NBC and FOX programming on two digital channels, and West Central Ohio Broadcasting Corporation, which broadcasts ABC and CBS on two digital channels ("Block Communications")—filed an application for review and argued that the Bureau erred in adding Auglaize County to WHIO's market. Though Block Communications acknowledges that its CBS affiliate was not entitled to must-carry rights because it is a low-power station,[3] it argued that it was harmed by the Bureau's decision because cable providers might drop its CBS affiliate in favor of WHIO's CBS station, which they could be required to provide under WHIO's must-carry rights.

The Federal Communications Commission reviewed the decision, considering statutory factors to support the Congressional goal of localism, and denied Block Communications'

---

[3] Under section 534, only a narrow category of low-power stations have must-carry rights. 47 U.S.C. § 534(h)(1)(A) ("[T]he term 'local commercial television station' means any full power television broadcast station, other than a qualified noncommercial educational television station within the meaning of section 535(l)(1) of this title[.]")

No. 18-4137, *Block Communications, Inc., et al. v. FCC, et al.*

application.  Since the agency's decision, cable systems in Auglaize County have continued to provide Block Communication's programming, including WHIO.

Block Communications timely sought our review of that FCC opinion and order. Petitioners seek review under 47 U.S.C. § 402(a),[4] 28 U.S.C. §§ 2342(1)[5] and 2344,[6] and Federal Rules of Appellate Procedure 15(a).[7]  The FCC's final order was released on September 19, 2018. Block Communications properly petitioned for review on November 16, 2018.  Jurisdiction is proper because Block Communications and its subsidiaries have their principal places of business within the Sixth Circuit.

## II.

We must first determine whether Block Communications has standing to challenge the FCC's Order on Review *de novo*.  *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).  If Block Communications does have standing to challenge the FCC's decision, then we review that decision to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

## III.

As a preliminary matter, the FCC argues that Block Communications is without standing to challenge the Order on Review.  To establish standing under Article III, a plaintiff must demonstrate "(1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful

---

[4] Under § 402(a), "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter . . . shall be brought as provided by and in the manner prescribed in chapter 158 of title 28."  42 U.S.C. § 402(a).

[5] That section provides that "The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend . . ., or to determine the validity of–(1) all final orders of the Federal Communication Commission made reviewable by section 402(a) of title 47[.]"  28 U.S.C. § 2342(1).

[6] Section 2344 provides that a party may appeal a final order to the court of appeals wherein venue lies within sixty days after the order's entry.  28 U.S.C. § 2344.

[7] That rule provides the requirements for a petition for review of an agency order.  Fed. R. App. P. 15(a).

conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). This court has previously found that a petitioner seeking direct appellate review of a final agency action "carries a burden of production similar to that required at summary judgment." *Sierra Club v. EPA*, 793 F.3d 656, 662 (6th Cir. 2015). In other words, unless standing is self-evident, Block Communications has the burden of establishing standing through specific facts, including citations to the administrative record and affidavits. *Tenn. Republican Party v. SEC*, 863 F.3d 507, 517 (6th Cir. 2017).

The FCC argues that Block Communications has failed to demonstrate that it sustained an injury. An injury is defined as "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Tenn. Republican Party*, 863 F.3d at 517 (quoting *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1548 (2016)). The Sixth Circuit has previously found standing absent definitive evidence if the injury is impossible to prove or could not be "specifically identified in advance." *Id.* (citing *Sierra Club*, 793 F.3d at 664; *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004)).

Due to the nature of this suit, Block Communications' injury would be economic, falling under the competitor standing doctrine. This doctrine recognizes that plaintiffs suffer an economic injury "when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition against them." *Sorenson Comm's, LLC v. FCC*, 897 F.3d 214, 226 (D.C. Cir. 2018) (internal quotations omitted). A "petitioner who is likely to suffer economic injury as a result of governmental action that changes market conditions satisfies this part of the standing test." *Clinton v. City of New York*, 524 U.S. 417, 433 (1998) (citation omitted). This court has previously explained the importance of permitting such cases of competitor standing, as "the absence of

competitor standing may render some agency actions effectively immune from judicial review."
*Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 677 (6th Cir. 2005).

In *Sw. Pa. Growth Alliance*, for example, petitioners challenged the Environmental
Protection Agency's designation that Ohio was in "attainment," meaning it met certain ozone
emissions standards. 144 F.3d 984, 987 (6th Cir. 1998). The petitioners, manufacturers and local
governments in Southwestern Pennsylvania, challenged their "nonattainment" designation by
arguing that their own ozone problem was caused by emissions from Ohio. *Id.* at 988. The
petitioners argued that they suffered an economic disadvantage because of the Ohio designation,
because the petitioners were required to pay higher costs for nonattainment areas, whereas Ohio
businesses were able to pay less for their ozone controls. *Id.* This court agreed:

> If the EPA incorrectly redesignated the Cleveland-Akron-Lorain area as attainment,
> then that area has an economic advantage over its neighbors in southwestern
> Pennsylvania because businesses in the Ohio area unfairly pay less for ozone
> control measures. Thus, the southwestern Pennsylvania area, which is designated
> as nonattainment, suffers an economic disadvantage compared to its Ohio neighbor.
> This economic disadvantage is an alleged "injury in fact" directly caused by the
> EPA's decision, an injury that would be redressed if the decision were overturned
> by this Court.

*Id.*

In this case, like the petitioners in our recent decision, *Protecting Air for Waterville v. Ohio
EPA*, however, Block Communications not only failed to provide any evidence of injury to
demonstrate standing, but "failed even to mention standing in [its] opening brief" and only
discussed the issue in its reply. 763 F. App'x 504, 508 (6th Cir. 2019). Block Communications
does not provide any record, citations, or affidavits to demonstrate that it has been injured by the

FCC's decision. Instead, Block Communications believes that "standing was self-evident" and "does not require a special demonstration." CA6 R. 35, Reply Br., at 6.

According to Block Communications, "[t]he economic reality is that, post-Bureau decision, Block's risk of being dropped by a cable system in one or more of the Auglaize Communities—or merely negotiating a less-advantageous retransmission agreement—was necessarily *increased* when Cox gained the right to compel cable systems in the Auglaize Communities to carry it." CA6 R. 35, Reply Br., at 10 (emphasis in original). However, Block Communications has failed to present the kind of "specific facts . . . through citations to the administrative record or 'affidavits or other evidence' attached to its opening brief" necessary for us to find they have suffered competitive disadvantage sufficient to confer standing. *Tenn. Republican Party*, 863 F.3d at 517 (quoting *Sierra Club v. EPA*, 793 F.3d 656, 662 (6th Cir. 2015)).

Block Communications concedes that "(1) the WHIO broadcast signal already reaches each of the Auglaize Communities; and (2) WHIO was already carried on the cable systems in each of the Auglaize Communities at the time the Cox Petition was decided by the Bureau." CA6 R. 35, Reply Br., at 24 (citing CA6 R. 28, Block Br., at 42). WHIO previously had must-carry rights in Auglaize County when it was designated as part of the Dayton DMA. When the Nielsen Company assigned Auglaize County to the Lima DMA, WHIO lost those rights. In its petition, WHIO explicitly requested that the FCC "maintain the status quo with respect to its continued carriage in the communities in question." *Bureau Order*, at 16020. "[C]able systems in [Auglaize County] already carry both WHIO and BCI's CBS affiliate, . . . even though the systems are not required to carry the latter due to its status as a low power station[.]" *Id.* The FCC therefore returned the market to its status quo by granting WHIO must-carry rights in Auglaize County alone. This did

not affect the rest of the Lima DMA. Therefore, the FCC did not "lift regulatory restrictions" on WHIO or "allow increased competition" against Block Communications.

This is not like the economic harm in *Sw. Pa. Growth Alliance*. All the potential injuries alleged by Block Communications are speculative and unsupported by specific facts in the record. For example, Block Communications argues that the FCC's decision "creates the *specter* that [cable] systems . . . would drop the in-market Block [Communications] Lima CBS station HD signal, and possibly the Block [Communications] Lima CBS station altogether." CA6 R. 28, Block Br., at 37 (emphasis added.) That has not happened. As the Bureau noted in its original decision, cable systems in Auglaize County "already carry both WHIO and BCI's CBS affiliate," despite the fact that they are not required to carry Block Communications' station, as they do not have must-carry rights. *Bureau Order*, at 16020. This is insufficient to constitute an injury. *See, e.g., Quincy Cable TV, Inc. v. FCC*, 768 F.2d 1434, 1445 n.24 (D.C. Cir. 1985) (finding an economic injury when petitioner could "point to assertions by cable operators that, but for the must-carry rules, they would carry its programming"). Further, Block Communications explained in their first opposition to WHIO's petition that "local cable systems have historically carried multiple CBS affiliates, including some systems that have carried three CBS affiliates for over 40 years—with many systems currently carrying WHIO-TV (Dayton) [Cox's CBS station], WOHL-CD 35.2 Lima [Block Communications' CBS station], and WBNS [a Columbus CBS affiliate]." Block Opp. at 5-6, PA 0388-89. Indeed, Block Communications has acknowledged that WHIO's ratings "likely ensure continued voluntary carriage" on Auglaize County cable systems. Block Opp. at 5, PA-0388. For these reasons, Block Communications has failed to "present specific facts

supporting standing through citations to the administrative record or affidavits or other evidence attached to its opening brief." *Tenn. Republican Party*, 863 F.3d at 517.

Further, the only possible harm Block Communications alleges, increased competition because of WHIO's must-carry rights, is nothing new. Rather, the FCC's decision was a return to the status quo before Auglaize County was included in the Lima DMA instead of the Dayton DMA. In other words, by allowing WHIO's must-carry rights in Auglaize County, the FCC was not harming Block Communications. Even if Block Communications had been harmed, it has failed to establish that the harm is "traceable" to the FCC's order, as required under Article III. It was Nielsen—*not* the FCC—which purported to effect a change for the 2013-2014 Television Year by re-designating Auglaize County to be part of the Lima DMA. The FCC decided that it would *prevent* Nielsen's actions from changing the status quo, by allowing the Auglaize County communities to remain in WHIO's television market and allowing WHIO to retain its must-carry rights. Thus, it is not clear that the FCC's order really was the cause of any injury Block Communications may have suffered, further distinguishing this case from *Sw. Pa. Growth Alliance*.

\* \* \* \* \*

Block Communications has failed to establish that they have standing to challenge the FCC's determination. We therefore dismiss the case and do not consider the merits of Block Communications' arguments concerning the FCC's order.