[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16623

_____

Agency No. 34-78683

THE GEORGIA REPUBLICAN PARTY,
NEW YORK REPUBLICAN STATE COMMITTEE,
TENNESSEE REPUBLICAN PARTY,

Petitioners,

versus

SECURITIES AND EXCHANGE COMMISSION,
FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,

Respondents.

_____

Petition for Review of a Decision of the
Securities and Exchange Commission

_____

(Date)

Before WILLIAM PRYOR and JULIE CARNES, Circuit Judges, and CORRIGAN,[*] District Judge.

JULIE CARNES, Circuit Judge:

In 2015, the Financial Industry Regulatory Authority ("FINRA"), a self-regulatory organization operating under the auspices of the Securities and Exchange Commission, proposed adopting Rule 2030—a regulation governing the political contributions of FINRA members who solicit government officials for investment advisory services contracts.  A year later, after notice and comment, the Commission issued an order approving the Rule.

The Georgia Republican Party, the New York Republican State Committee, and the Tennessee Republican Party filed a petition challenging the Commission's order.  They contend that the Commission lacked the authority to approve Rule 2030 and that the Rule violates the First Amendment.  We, however, are unable to consider the petition's merits because the Georgia Party does not have standing to challenge the Rule and this Court is not the proper venue for either the New York Committee or the Tennessee Party.  As a result, we dismiss the Georgia Party for lack of jurisdiction, and transfer the appeal of the remaining two parties to the United States Court of Appeals for the District of Columbia Circuit.

---

[*]  Honorable Timothy J. Corrigan, United States District Judge for the Middle District of Florida, sitting by designation.

## I.    <u>BACKGROUND</u>

In 2010, the Commission enacted rules generally prohibiting investment advisors from "provid[ing] investment advisory services for compensation to a government entity within two years after a contribution to an official of the government entity."  17 C.F.R. § 275.206(4)–5(a)(1); *see* 75 Fed. Reg. 41018, 41068–69 (2010).  The Commission's rules also prohibit investment advisors from using placement agents—persons who solicit government officials for investment advisory services contracts on behalf of investment advisers—unless such agents are "regulated person[s]" within FINRA.  17 C.F.R. § 275.206(4)–5(a)(2)(i)(A).  The Commission's rules further prohibit investment advisers from working with placement agents unless FINRA enacts rules that prohibit these placement agents from "engaging in distribution or solicitation activities if certain political contributions have been made" and such rules are "substantially equivalent" to, or "more stringent" than, the Commission's comparable rules for investment advisers.  *Id.* § 275.206(4)–5(f)(9)(ii).

So, in 2015, FINRA proposed Rule 2030 to the Commission for adoption.  80 Fed. Reg. 81650, 81650–56 (2015); *see* 15 U.S.C. § 78s(b)(1) (requiring that self-regulatory organizations receive approval from the Commission before any rule change may take effect).  Subject to some exceptions, Rule 2030 prohibits

3

placement agents from "engag[ing] in distribution or solicitation activities for compensation with a government entity on behalf of an investment adviser that provides or is seeking to provide investment advisory services to such government entity within two years after a contribution to an official of the government entity." FINRA Rule 2030(a). Thus, if a placement agent makes a contribution to a government official, the placement agent must wait two years before it can solicit the employing governmental entity for an investment advisory services contract and be paid for doing so.

Rule 2030 also includes provisions that attempt to prevent placement agents from circumventing the Rule by making indirect contributions to government officials. One such provision states that placement agents may not "solicit or coordinate any person or political action committee to make" payments "to a political party of a state or locality of a government entity with which the covered member is engaging in, or seeking to engage in, distribution or solicitation activities on behalf of an investment adviser." FINRA Rule 2030(b).

In August 2016, after notice and comment, the Commission issued a final order approving the Rule. 81 Fed. Reg. 60051, 60051–52 (2016). In response, the Georgia Party, the New York Committee, and the Tennessee Party filed a joint petition in this Court under 15 U.S.C. § 78y(a), asserting that the Commission

4

lacked the authority to approve Rule 2030 and that the Rule violates the First Amendment.

## II.    DISCUSSION

### A.    The Georgia Party Lacks Standing to Challenge Rule 2030.

"Article III of the Constitution restricts [the judicial power] to the traditional role of Anglo–American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).  Standing doctrine "reflect[s] this fundamental limitation" and "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction."  *Id.* at 493 (emphasis omitted) (internal quotation marks omitted).  So, if a plaintiff lacks standing, then "federal courts do not have jurisdiction over his or her complaint." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

"The party invoking federal jurisdiction bears the burden of establishing" standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  "Since [standing elements] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any

5

other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* At the pleading stage "general factual allegations of injury . . . may suffice." *Id.* But in response to a summary judgment motion, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). In this context, a petition for appellate review of a final agency order is more analogous to a motion for summary judgment, "in that both request a final judgment on the merits." *Iowa League of Cities v. EPA*, 711 F.3d 844, 869 (8th Cir. 2013). "Accordingly, parties seeking direct appellate review of an agency action must prove each element of standing as if they were moving for summary judgment in a district court." *Id.* Thus, petitioners "bear the responsibility of meeting the same burden of production, namely 'specific facts' supported by 'affidavit or other evidence.'" *Id.* at 870 (quoting *Lujan*, 504 U.S. at 561); *see also Sierra Club v. EPA*, 793 F.3d 656, 662 (6th Cir. 2015); *N. Laramie Range Alliance v. FERC*, 733 F.3d 1030, 1034 (10th Cir. 2013); *Citizens Against Ruining the Environment v. EPA*, 535 F.3d 670, 675 (7th Cir. 2008); *Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002).

To establish standing then, a petitioner must put forth specific facts supported by evidence showing that: "(1) it has suffered an 'injury in fact' . . . (2)

6

the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Our focus here is on the first element: injury in fact. An injury in fact must be "concrete and particularized and . . . actual or imminent, not conjectural or hypothetical." *Id.* at 180. "[T]he injury required for standing need not be actualized," but it must be "real, immediate, and direct." *Davis v. FEC*, 554 U.S. 724, 734 (2008). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original) (quoting *Lujan*, 504 U.S. at 565 n.2). Indeed, the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Id.* (alteration and emphases in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). And it has "been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Id.* at 1150. A prospective injury that is contingent on the choices of a third party is less likely to establish standing.

7

*See id.*; *see also Summers*, 555 U.S. at 494 ("[Petitioners] can demonstrate standing only if application of the regulations by the Government will affect *them* . . . ." (emphasis in original)).

Here, the Georgia Party is not directly regulated by Rule 2030 because it is not a placement agent.  Nevertheless, the Party argues that it suffers an injury in fact from Rule 2030 because the Rule:  (1) inhibits the Party's ability to fundraise; (2) forces the Party to divert resources; and (3) harms its members.  Although each of these types of harm can potentially establish injury in fact, the Georgia Party has not put forward adequate facts to support any of these theories.

       1.     Injury based on the impairment of the Georgia Party's ability to fundraise

The Georgia Party, relying on the D.C. Circuit's opinion in *Taxation without Representation of Wash. v. Regan*, 676 F.2d 715 (D.C. Cir. 1982), *rev'd on other grounds*, 461 U.S. 540 (1983), contends that it suffers a direct injury from Rule 2030 because the Rule will hinder the Party's ability to fundraise.  The Party asserts that, because Rule 2030 prohibits placement agents from "solicit[ing] or coordinat[ing]" to make any "[p]ayment to a political party of a state . . . with which the covered member is engaging in, or seeking to engage in, distribution or solicitation activities on behalf of an investment adviser," the Rule will necessarily

8

harm the Party's fundraising because some placement agents will not be able to contribute to the Party.

The Georgia Party, however, does not provide sufficient evidence to support its assertions. The Party's only evidence is the affidavit of J. Adam Pipkin, the Georgia Party's Executive Director. Mr. Pipkin's affidavit states broadly that those regulated by Rule 2030 "will be . . . limited in their ability to contribute to the Georgia Republican Party" and that the Rule "will significantly hinder the state party." Mr. Pipkin does not assert that he himself would like to contribute to the Georgia Party but has decided not to do so because of Rule 2030. He does not identify another person who wishes to contribute but will not because of the Rule. And he does not offer any factual support for his general assertion that the Georgia Party will be "significantly hinder[ed]" in some way. In other words, the affidavit offers no facts to show that the Georgia Party's fundraising will actually be harmed. The affidavit's generalized "[a]llegations of *possible* future injury," without factual support, "are not sufficient" to establish "*certainly impending*" injury. *Clapper*, 568 U.S. at 409 (alteration and emphases in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

9

2.    Injury based on the diversion of the Georgia Party's resources

The Georgia Party also argues that it is harmed because it must divert resources from its core mission to advise state and local officeholders about the impact of Rule 2030 on their ability to fundraise.  We have recognized that an "organization has standing to sue on its own behalf if the defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts."  *Ga. Latino Alliance for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1259–60 (11th Cir. 2012) (quotation marks omitted).

Mr. Pipkin, however, does not state in his affidavit that the Georgia Party has been, or will be, forced to divert any resources at all—let alone that such diversion impairs the Party.  Because the Georgia Party offers no facts whatsoever to support this theory, it necessarily fails.

3.    Injury to the Georgia Party's members

Finally, the Georgia Party contends that it has standing because its members have standing.  "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Friends of the Earth*, 528 U.S. at 181.  To establish standing under

10

this theory, an organization must "make specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm." *Summers*, 555 U.S. at 498.  We cannot accept an organization's "self-descriptions of [its] membership . . . . regardless of whether it is challenged." *Id.* at 499.

The Georgia Party alleges that Rule 2030 harms its members in two ways. First, members who are placement agents directly regulated by Rule 2030 face consequences for making contributions to certain candidates.  Second, members who are state and local officials are inhibited by Rule 2030 from receiving such contributions.

Yet, once again, the Georgia Party has failed to allege that a specific member will be injured by the rule, and it certainly offers no evidence to support such an allegation.  Mr. Pipkin's affidavit identifies that he is a member of the Party, but his affidavit does not establish that he is regulated by Rule 2030 or that he plans to make (or receive) a specific contribution that would trigger the Rule. And Mr. Pipkin's affidavit identifies no other members of the Georgia Party who are covered or affected by Rule 2030.  Thus, the Party has failed to identify at least one member who has or will suffer harm from Rule 2030 as required to show injury in fact.

11

The Georgia Party invokes this Court's previous decision in *Florida State Conference of the NAACP v. Browning* to argue that it need not "name names" to establish standing based on prospective harm. 522 F.3d 1153, 1160 (11th Cir. 2008). In *Browning*, we held that organizations need not identify particular members who would be harmed because future "probabilistic injuries" to unidentified members were sufficient if at least one member was "certain to get injured in the end." *Id.* at 1162–64.

Here, however, Mr. Pipkin's affidavit does not aver that at least one of the Georgia Party's members is certain to be injured by Rule 2030. Moreover, since *Browning*, the Supreme Court has rejected probabilistic analysis as a basis for conferring standing. In *Summers*, the majority rejected the dissent's theory that an organization could establish standing if "there is a statistical probability that some of [its] members are threatened with concrete injury." 555 U.S. at 497. The Supreme Court reasoned that probabilistic standing ignores the requirement that organizations must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Id.* at 498; *see also id.* at 498–99 ("This requirement of naming the affected members has never been dispensed with in light of statistical probabilities, but only where all the members of the organization are affected by the challenged activity."). So "[w]hile it is

12

certainly possible—perhaps even likely—that one individual will" suffer an injury from Rule 2030, "that speculation does not suffice." *Id.* at 499.

The Georgia Party also erroneously relies on *Arcia v. Florida Secretary of State*, where we held that three organizational plaintiffs had standing to challenge "Florida's efforts to remove the names of ineligible voters from the State's voter rolls." 772 F.3d 1335, 1339, 1342 (11th Cir. 2014). To be sure, we explained that an "organizational plaintiff[] need not establish that all of [its] members are in danger" and approvingly cited our holding in *Browning* that "large organizations . . . ha[v]e standing [when] there [is] a high probability that at least one of the[ir] members w[ill] be [harmed]." *Id.* at 1342. But in *Arcia*, we were not asked whether *Summers* and its requirement that an organization proffer "at least one *identified* member [who] had suffered or would suffer harm," 555 U.S. at 498 (emphasis added), had abrogated our precedent about probabilistic injury to unnamed plaintiffs. Nor did we need to answer this question because we acknowledged that the organizations in *Arcia* "represent a large number of people, *like Ms. Arcia and Ms. Antoine*, who face a realistic danger of being identified in the [voter] removal program[]." *Id.* (emphasis added). In the light of this identification of two members, the only question before this Court was whether there was a realistic danger of injury to the *named* members, and not whether there

13

was a sufficient possibility that *any* member would suffer an injury. We did not relax the requirement that an organization name at least one member who can establish an actual or imminent injury.

In short, the Georgia Party has failed to put forward sufficient factual support to show that it has, or will, suffer an injury in fact from Rule 2030 to establish standing under any theory. For reasons unknown to this Court, the Georgia party has not submitted an affidavit from a member who is a placement agent regulated by Rule 2030 and who has decided not to make a particular contribution because of the Rule. *See Tenn. Republican Party v. SEC*, 863 F.3d 507, 517 (6th Cir. 2017) ("[T]here is no reason why Petitioners could not have put forth an affidavit from a particular municipal advisor professional who would have contributed more than $250 were it not for the 2016 Amendments."). Because we lack jurisdiction over a party that does not have standing, we dismiss the Georgia Party for lack of jurisdiction.

**B.    This Circuit is not the Proper Venue for the New York Committee and the Tennessee Party.**

Having dismissed the Georgia Party, we now address whether this is the appropriate venue for the New York Committee and the Tennessee Party.[1] The

---

[1] We need not—and do not—address whether the New York Committee and the Tennessee Party have standing, because "[j]urisdiction is vital only if the court proposes to issue a judgment

New York Committee and the Tennessee Party filed their petition in this Court

under 15 U.S.C. § 78y(a), which provides that: "A person aggrieved by a final

order of the Commission entered pursuant to this chapter may obtain review of the

order in the United States Court of Appeals for the circuit in which he resides or

has his principal place of business, or for the District of Columbia Circuit."

Without the Georgia Party, this Circuit is clearly not the appropriate venue

for the New York Committee and the Tennessee Party because neither party

resides or has its principal place of business within this Circuit.

The only question then is the proper remedy. We could dismiss the New

York Committee and the Tennessee Party for improper venue, *Fed. Power

Comm'n v. Texaco, Inc.*, 377 U.S. 33, 39 (1964) (holding that a circuit court "erred

in failing to dismiss [a] petition for lack of venue"), but we have been hesitant to

do so where dismissal would deprive a party of its right to appellate review, *see

Becker v. Comm'r of Internal Revenue*, 852 F.2d 524, 526 (11th Cir. 1988). We

also have "inherent authority to transfer an appeal when [this] is not the court of

proper venue" and doing so "would be in the interest of justice." *Id.*

on the merits." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431
(2007) (quoting *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006)).

15

Because the New York Committee and the Tennessee Party could not refile their petition in a proper venue due to the fact that it is now well outside the 60-day filing period, 15 U.S.C. § 78y(a)(1), we conclude that it is in the interest of justice to transfer the appeal.  The parties dispute whether venue would be proper for both the New York Committee and the Tennessee Party in the Second or Sixth Circuits, where each respectively resides.  But, at oral argument, all agreed that the D.C. Circuit would be a proper venue.  Accordingly, we transfer the appeal there.

## **CONCLUSION**

We **DISMISS** the Georgia Party for lack of jurisdiction and **TRANSFER** the New York Committee and Tennessee Party's petition to the D.C. Circuit.

16