[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11511
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-03414-MLB


AMERICAN COLLEGE OF EMERGENCY PHYSICIANS,
MEDICAL ASSOCIATION OF GEORGIA,

                                                    Plaintiffs-Appellants,

versus

BLUE CROSS AND BLUE SHIELD OF GEORGIA, et al.,

                                                    Defendants-Appellees.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 22, 2020)

Before MARTIN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

        The American College of Emergency Physicians (ACEP) and the Medical

Association of Georgia (MAG) appeal the district court's dismissal of their

amended complaint against Blue Cross and Blue Shield of Georgia, Inc.; Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.; and Anthem Insurance Companies, Inc.[1] for failure to state a claim and lack of standing.  See Fed. R. Civ. P. 12(b)(1); 12(b)(6).  After careful review, we reverse the district court's judgment and reinstate ACEP and MAG's claims brought under the Employee Retirement Income Security Act (ERISA) and the Patient Protection and Affordable Care Act (ACA) against Blue Cross Blue Shield.

## I.

ACEP and MAG are organizations dedicated to promoting the "rights of their physician members, and patients alike, for the delivery of the highest quality of care."  ACEP represents over 38,000 emergency physicians, medicine residents, and medical students.  MAG is a non-profit organization that "works with physicians, hospitals, insurers, and legislators in an effort to reform our health care system."  The physicians who belong to ACEP and MAG require their patients, including those insured by Blue Cross Blue Shield, to assign their health insurance benefits to the physicians.  These assignments include the right to "payment for emergency care and treatment" and the "rights to appeal denials for emergency department claims."

---

[1] We refer to Defendants collectively as "Blue Cross Blue Shield."

As set out in the ACA, a "prudent layperson" standard applies to all federal health-care plans, all insurance plans governed by ERISA, and qualified health insurance plans in state-operated health insurance exchanges. This standard requires health plans to cover health services provided by an emergency department whenever a patient has an "emergency medical condition." An emergency medical condition is defined as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that a prudent layperson, who possesses an average knowledge of health and medicine, could reasonably expect the absence of immediate medical attention" to result in serious negative health outcomes.[2] 42 U.S.C. § 300gg-19a(b)(2)(A). It is notable that this standard does not look to the ultimate diagnosis that the patient receives. The only relevant considerations are the presenting symptoms and whether a prudent layperson would think that emergency medical attention is necessary based on those symptoms.

In their complaint, MAG and ACEP allege that Blue Cross Blue Shield violated the prudent layperson standard when it implemented a new emergency department visit review process (the "ED review") in 2017. That year Defendants sent letters to their insureds in Georgia cautioning that they should only go to the

---

[2] Another statutory provision clarifies what types of negative health outcomes. See 42 U.S.C. § 1395dd(e)(1)(A).

emergency room for emergencies, otherwise their insurance would not cover their emergency room visits. Blue Cross Blue Shield also gave presentations publicizing their new ED review policy. During at least one of these presentations, Defendants confirmed that their new ED review process was "based on diagnosis codes in addition to medical records." The reviews are performed by a physician. Blue Cross Blue Shield then began retrospectively denying payments to healthcare providers by reclassifying certain emergency department visits as "non-emergent" using the diagnostic codes that were assigned to the visits. In the second half of 2017, Blue Cross Blue Shield reviewed 10,000 claims (out of 51,000 received claims) for ER visits in Georgia and denied 3,500 of them. At various times Blue Cross Blue Shield has claimed that its ED review process appropriately applies the prudent layperson standard.

In October 2018 MAG and ACEP filed the First Amended Complaint (the operative complaint here) against Defendants. The complaint alleged the ED review process violated the prudent layperson standard and sought declaratory and injunctive relief for violations of the ACA and ERISA.[3] Blue Cross Blue Shield filed a pre-answer motion to dismiss, asserting that MAG and ACEP failed to

---

[3] ACEP and MAG do not contest the dismissal of their claims under the Emergency Medical Treatment and Active Labor Act (EMTALA) and state and federal group health regulations.

4

plead sufficient facts to support their allegation and that Plaintiffs lacked standing to bring these claims.

The district court granted Defendants' motion and dismissed the complaint with prejudice. The district court found ACEP and MAG's pleadings insufficient because they did not identify a specific instance in which "Defendants' ED Review improperly applies the prudent layperson standard." The district court also relied upon Defendants' claims that their ED review process did not violate the prudent layperson standard. The district court found that the members of ACEP and MAG lacked standing because the assignment of insurance plan benefits to them did not give them standing to seek equitable relief and because Plaintiffs failed to allege how the ED review process harmed their members.

Plaintiffs timely appealed.

## II.

"We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." Chaparro v. Carnival Corp., 693 F.3d 1333, 1335 (11th Cir. 2012) (per curiam) (quotation marks omitted). To prevent dismissal under Rule 12(b)(6), a plaintiff must allege sufficient facts to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Claims are

5

plausible when the plaintiff pleads facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A pleading must offer more than "labels and conclusions or a formulaic recitation of the elements of a cause of action," but "detailed factual allegations" are not needed. Id. at 678, 129 S. Ct. at 1949 (quotation marks omitted).

We review de novo the district court's grant of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam). The plaintiff need only have "sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true." Id. (quotation marks omitted).

## III.

The district court erred in dismissing ACEP and MAG's complaint for failure to state a claim. The district court faulted Plaintiffs for failing to identify specific instances in which "Defendants' ED Review improperly applies the prudent layperson standard." But ACEP and MAG are not challenging individual denials. They challenge the ED review policy writ large. Plaintiffs allege the ED review process was "based on diagnosis codes in addition to medical records." The ED review is also conducted by a physician, not a layperson. The prudent

6

layperson standard asks what someone with "average knowledge of health and medicine" would think is an emergency based on the severity of their "acute symptoms." 42 U.S.C. § 300gg-19a(b)(2)(A). A physician's professional assessment of symptoms is irrelevant. The regulations do not call upon a medical doctor to put aside her years of training to evaluate what someone without any such training would view as a medical emergency. The diagnosis that the patient ultimately receives is irrelevant. It is plausible that an ED review process incorporating both of those elements—a physician assessment and patient diagnosis—violates the prudent layperson standard. ACEP and MAG have thus alleged facts about the ED review process as a whole that allow a court to "draw the reasonable inference" that Defendants violated the standard. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

The district court also gave great weight to ACEP and MAG's acknowledgement of Blue Cross Blue Shield's claim that it is complying with the prudent layperson standard. Defendants' conclusory statements about their legal compliance has nothing to do with whether ACEP and MAG have plausibly alleged that Blue Cross Blue Shield violated the law. Because ACEP and MAG

7

have otherwise met their burden, this assertion is no basis for dismissing their claims.[4]

## IV.

The district court also erred when it found that ACEP and MAG lacked standing to bring their claims under ERISA and the ACA. "An organization has standing to enforce the rights of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Fla. State Conference of N.A.A.C.P. v. Browning, 522 F.3d 1153, 1160 (11th Cir. 2008) (quotation marks omitted).[5] When an organization seeks injunctive relief, "individual participation of the organization's members is not normally necessary." Id. (quotation marks omitted).[6]

---

[4] Blue Cross Blue Shield also argues that Plaintiffs failed to contest the district court's dismissal of their claims for litigation expenses under ERISA and for injunctive relief under the ACA and ERISA. But the district court made no such holding. It dismissed those claims solely on the basis that Plaintiffs failed to state a claim under the ACA and ERISA. The district court did not provide alternative, independent grounds for dismissing those claims and ACEP and MAG challenge any assertion that they failed to state a claim for relief under ERISA and the ACA. Thus ACEP and MAG did not abandon their claims for injunctive relief and litigation expenses.

[5] No one disputes that the interests at stake here are germane to ACEP and MAG's purposes.

[6] Plaintiffs also pled facts related to their injury as organizations and argued that in addition to associational standing they also had organizational standing based on a diversion of resources theory. The district court did not consider this argument or those facts at all.

The district court first found that Plaintiffs' members did not themselves have standing to sue. "[I]t is well-established in this and most other circuits that a healthcare provider may acquire derivative standing to sue under ERISA by obtaining a written assignment from a 'participant' or 'beneficiary' of his right to payment of medical benefits." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1347 (11th Cir. 2009). Here ACEP and MAG allege that Blue Cross Blue Shield's insureds have assigned their benefits to ACEP and MAG's member physicians. Thus their members have acquired derivative standing to sue under ERISA.

The district court determined that the assignment of the right to payment and to appeal denials did not include the right to seek equitable relief, which is the only type of relief that ACEP and MAG seek here. In so finding the district court ignored precedent to the contrary. In Connecticut State Dental, this Court concluded that an assignment of the right to payment of medical benefits under a health insurance plan allowed a dentists' professional organization to sue a plan provider for declaratory and injunctive relief. Conn. State Dental, 591 F.3d at 1347. In Cagle v. Bruner, 112 F.3d 1510 (11th Cir. 1997), we held that a hospital had standing to seek declaratory relief against a health benefit fund because the

---

Nonetheless, because we find that Plaintiffs sufficiently pled associational standing, we need not reach that issue.

9

beneficiaries assigned the hospital their "right to receive payment of benefits."  Id. at 1515.  The assignment of the right to payment includes the right to seek equitable relief.[7]

Blue Cross Blue Shield argues on appeal that the rule from Connecticut State Dental and Cagle only applies to claims under 29 U.S.C. § 1132(a)(1)(B), not claims brought, as ACEP and MAG did here, under 29 U.S.C. § 1132(a)(3).  Not so.  As the Court stated in Cagle, its holding that an assignment of benefits confers derivative standing was based on its assessment that "neither § 1132(a) nor any other ERISA provision prevents derivative standing based upon an assignment of rights from an entity listed in that subsection."  Cagle, 112 F.3d at 1515.  The Court's holding applies not only to § 1132(a) in its entirety, but also to the whole of ERISA.  ACEP and MAG brought their claims under § 1132(a) and thus have derivative standing to seek equitable relief from Defendants.

The district court further faulted Plaintiffs for failing to "identify at least one member who has been or will be imminently injured."  But ACEP and MAG identified a whole category of its members who are harmed and will be harmed by Defendants' new policy: all members whose patients are insured by Defendants.[8]

_____

[7] Blue Cross Blue Shield points to unpublished cases they say suggest otherwise.  Those cases are not binding on our Court.

[8] To the extent that the district court's criticism is that ACEP and MAG failed to name which specific members are harmed, we note that for prospective equitable relief, organizational plaintiffs "need not 'name names' to establish standing."  Ga. Republican Party v. S.E.C., 888 F.3d 1198, 1204 (11th Cir. 2018).  An organizational plaintiff seeking retrospective relief may be

The district court also found that ACEP and MAG failed to allege how their members were harmed by the ED review policy.  To the contrary, ACEP and MAG alleged that the new ED review policy harms their members because it resulted in and will continue to result in "retrospective denials of payment for emergency department care."  Their doctor members are harmed because they are not being paid.  Thus ACEP's members "would otherwise have standing to sue in their own right."  See Fla. State Conference of N.A.A.C.P., 522 F.3d at 1160 (quotation marks omitted).

Blue Cross Blue Shield also argues here that ACEP failed to establish associational standing because the requested injunctive and declaratory relief would require individualized determinations about whether each insured has assigned their benefits; whether each plan is governed by the relevant statutes; and whether each denial of a claim for emergency services violated the prudent layperson standard.  But again, ACEP and MAG are not challenging individual denials of claims.  Instead they allege that the ED review policy as a whole is illegal.  Assessing their challenge to the policy does not require individualized determinations as to each denial.  Neither would crafting an injunction halting

---

required to list at least one name, but only "after some discovery." Fla. State Conference of N.A.A.C.P., 522 F.3d at 1160.  In other words, requiring specific names at the motion to dismiss stage is inappropriate.

implementation of the policy or a declaration that the policy violates the prudent

layperson standard require individualized assessments.

For these reasons, Plaintiffs have associational standing.

**REVERSED AND REMANDED.**